IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CHARLIE J. DARLING, | CV 21–147–M–DLC |
| Plaintiff, | |
| vs. | ORDER |
| JUDGE AMY EDDY; ALJ JOSHUA MORIGEAU; ALJ ELIZABETH LEMAN; CRYSTLE SELLERS; LEIGH ANNE MILLER; DIANE CLARK; KATHERINE MAXWELL; and MONTANA CHILD SUPPORT SERVICES DIVISION (CSSD), | |
| Defendants. | |

Before the Court are State Defendants' Motion to Dismiss Amended
Complaint (Doc. 8) and Defendant Katherine Maxwell's Motion to Dismiss
Amended Complaint (Doc. 10).  For the reasons stated herein, the motions to
dismiss will be granted.  All other pending motions will be denied as moot.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Charlie J. Darling ("Plaintiff"), proceeding pro se, filed a motion to
proceed in forma pauperis (Doc. 1) and lodged a complaint (Doc. 2) alleging
violations of his constitutional and federal statutory rights stemming from state-
court proceedings regarding the dissolution of his marriage and establishment of a
parenting plan.  Before the Court ruled on his motion to proceed in forma pauperis,

1

Plaintiff paid the filing fee and filed an amended complaint (Doc. 7).  Construing

Plaintiff's complaint liberally, as required for pro se litigants, *Wolfe v. Strankman*,

392 F.3d 358, 362 (9th Cir. 2004), Plaintiff alleges that Defendants violated the

United States Constitution and federal law by considering his VA and SSA

benefits in calculating his alimony and child support obligations and by accessing

his medical records.  (*See generally* Doc. 7.)  As relief, he requests declaratory

judgment, punitive damages, recovery of his "federal records," and an injunction

against the State to prevent retaliation.  (*Id.* at 14.)

The State Defendants—Judge Amy Eddy, Joshua Morigeau, Elizabeth

Leman, Crystle Sellers, Leigh Anne Miller, Diane Clark, and Montana Child

Support Services Division—filed a motion to dismiss for failure to state a claim

and lack of subject matter jurisdiction (Doc. 8), and Defendant Katherine Maxwell

filed a motion to dismiss for failure to state a claim (Doc. 10).  Plaintiff filed two

responses (Docs. 12, 14), and the State Defendants moved to strike the second

(Doc. 16).  Plaintiff later filed an ex parte motion requesting written answers to

several "federal questions presented."  (Doc. 20.)

## STANDARD OF REVIEW

The Court may dismiss a complaint under Rule 12(b)(6) of the Federal Rules

of Civil Procedure if it "fail[s] to state a claim upon which relief can be granted."

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff
pleads factual content that allows the court to draw the reasonable inference that
the defendant is liable for the misconduct alleged." *Id.*  Although the court must
accept all well-pleaded factual allegations contained in the complaint as true, it
need not accept as true legal conclusions couched as factual allegations.  *Id.* at
678–79.  A complaint that "tenders naked assertion[s] devoid of further factual
enhancement[,]" "labels and conclusions[,] or a formulaic recitation of the
elements of a cause of action will not do." *Id.* at 678 (internal quotations omitted).

In ruling on a motion under Rule 12(b)(6), a court is generally limited to
considering the pleadings; if the court relies on material outside the pleadings, the
motion converts to a motion for summary judgment.  *Khoja v. Orexigen
Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).  However, a court may also
rely on matters subject to judicial notice under Rule 201 of the Federal Rules of
Evidence and/or documents incorporated by reference into the complaint without
converting the motion to one for summary judgment.  *Id.* at 998–99, 1002.  For
example, the court may take judicial notice of matters of public record, but not
disputed facts contained in such public records.  *Id.* at 999.  A court may also treat
documents to which the plaintiff extensively refers or which form the basis of the

plaintiff's claim as incorporated into the complaint as though they are part of the complaint itself; the policy concern underlying this rule is to prevent plaintiffs from surviving a motion to dismiss by deliberately omitting references to, or portions of, documents that weaken or doom their claims. *Id.* at 1002. In this case, the Court finds it unnecessary to consider the documents attached to State Defendants' motion (Docs. 9-1–9-9) except to the extent the Court takes judicial notice of the state court records as public records to confirm that Plaintiff and Defendants were involved in state-court litigation concerning the dissolution of Plaintiff's marriage and establishment of a parenting plan.

The Court also may dismiss a complaint under Rule 12(b)(1) for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Where the existence of subject matter jurisdiction depends on the allegations in the plaintiff's complaint rather than resolution of a factual dispute, the court assumes the truth of the allegations and draws all reasonable inferences in his favor. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Where the *Rooker-Feldman* doctrine applies, the federal court lacks subject matter jurisdiction over the lawsuit, and dismissal under Rule 12(b)(1) is appropriate. *Id.* at 362–63.

DISCUSSION

## I.     State Defendants' Motion to Dismiss (Doc. 8)

### A.     Failure to State a Claim

#### 1.     Defendant Child Support Services Division

State Defendants first argue that the Court must dismiss Plaintiff's claim against Defendant Child Support Services Division because it is a division of Montana's Department of Public Health and Human Services ("DPHHS"), and as a statutorily created department of the State, (1) the Court lacks subject matter jurisdiction under the Eleventh Amendment; and (2) CSSD is not a "person" subject to a claim under 42 U.S.C. § 1983.  (Doc. 9 at 11.)  The Court agrees with both assertions.  "[A] State is not a person within the meaning of § 1983[,]" and Congress did not abrogate the States' Eleventh Amendment immunity in enacting Section 1983.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64–67, 71 (1989).  Whether an entity is an arm of the State and thus entitled to Eleventh Amendment immunity depends in part on the nature of the entity created by state law.  *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977).  DPHHS is established by statute as a department within Montana's executive branch, and under Montana law, a department "includes its units."  Mont. Code Ann. §§ 2-15-102(4), 2-15-2201.  DPHHS is vested by statute with authority to, among other things, "take appropriate action to establish or enforce [child] support

5

obligations against persons owing a duty to pay support" and to establish by rule the terms and conditions by which such services are provided.  Mont. Code Ann. § 40-5-203; *see also id.* § 40-5-201(3) (defining "Department" as department of public health and human services).  By Department rule, CSSD is a division of DPHHS, Mont. Admin. R. 37.62.103(3), and DPHHS rules govern CSSD's administrative actions, Mont. Admin. R. 37.62.301.  CSSD plainly is an arm of the state, and it thus is entitled to Eleventh Amendment immunity and is not a "person" under § 1983.  Accordingly, Plaintiff's claims against CSSD must be dismissed.

### 2.    State Consideration of VA and SSA Benefits

State Defendants argue that Plaintiff has failed to articulate a civil rights violation under § 1983 because federal law permits states to consider VA and SSA benefits in calculating a person's child support obligations.  (Doc. 9 at 11–14.) State Defendants identify Supreme Court precedent holding that federal law did not preempt state courts from enforcing a veteran's child support obligation or protect a veteran's disability benefits from seizure, *Rose v. Rose*, 481 U.S. 619 (1987), as well as more recent district court cases dismissing claims substantially identical to Plaintiff's.  (*Id.* at 12–13.)  Plaintiff responds that a congressional amendment to 38 U.S.C. § 211 after *Rose* was decided "preempted state jurisdiction by the direct enactment of Positive Law making it absolutely clear that

6

VA decisions cannot be reviewed by 'ANY official or ANY court.'" (Doc. 12 at 3.)  He focuses in particular on the following quoted language from the Syllabus of the Court in *Rose*: "Title 38 U.S.C. § 211(a) . . . does not vest exclusive jurisdiction in the VA, nor preempt state court jurisdiction to enforce a veteran's child support obligation."  (Doc. 14 at 2 (quoting *Rose*, 481 U.S. at 620).)  Plaintiff further argues that this Court should vacate and remand all of the district court cases cited by State Defendants.  (Doc. 12 at 5.)

Plaintiff's argument that *Rose* has been superseded by statute rests on a misunderstanding of the holding in *Rose* and the relevant statutory language.  At the time *Rose* was decided, 38 U.S.C. § 211(a) provided:

> [D]ecisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans and their dependents . . . shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision . . . .

*Rose*, 481 U.S. at 629.  The Supreme Court "f[ound] no clear indication that Congress intended the Administrator to make child support determinations contrary to the determinations of state courts.  The [statutory] interest in uniform administration of veterans' benefits focuses, instead, on the technical interpretations of the statutes granting entitlements, particularly on the definitions and degrees of recognized disabilities and the application of the graduated benefit schedules. . . .  Thus, even assuming that § 211(a) covers a contempt proceeding

brought in state court against a disabled veteran to enforce an order of child

support, that court is not reviewing the Administrator's decision finding the

veteran eligible for specific disability benefits."  *Id.*  In short, § 211(a) prohibited a

narrow category of judicial review: judicial review of the VA Administrator's

decisions about what benefits a particular veteran was entitled to.  Accordingly, the

Court held that § 211(a) "does not pre-empt exercise of state-court jurisdiction to

enforce a veteran's child support obligation."  *Id.* at 629–30.

Congress subsequently amended and renumbered § 211(a), which now

reads:

> (a) The Secretary shall decide all questions of law and fact necessary to
> a decision by the Secretary under a law that affects the provision of
> benefits by the Secretary to veterans or the dependents or survivors of
> veterans. Subject to subsection (b), the decision of the Secretary as to
> any such question shall be final and conclusive and may not be
> reviewed by any other official or by any court, whether by an action in
> the nature of mandamus or otherwise.

38 U.S.C. § 511(a).  The exceptions set forth in subsection (b) are (1) judicial

review of rules and regulations; (2) claims against the United States regarding

veterans' insurance; (3) veterans' housing and small business loans; and

(4) appeals of veterans claims.  38 U.S.C. § 511(b).  Darling argues that Congress's

decision to prohibit judicial review in *any* court, rather than only "any court of the

United States," reflects congressional intent to supersede *Rose* and prohibit state

courts from "interfer[ing] with" veterans' benefits by considering them in

determining a veteran's support obligations.  (Doc. 14 at 3.)  However, this amendment does not substantively alter the statutory language essential to the Supreme Court's holding in *Rose*, which limited the statute's application to the Administrator/Secretary's decisions about what benefits a veteran or his or her dependents or survivors are entitled to.  Just as in *Rose*, Montana's consideration of veterans' benefits as income in calculating a veteran's child support obligations is *not* judicial review of the Secretary's decision regarding what benefits Plaintiff is entitled to.  481 U.S. at 629.  Accordingly, § 511(a) cannot provide the basis for his § 1983 claim because § 511(a) does not prohibit Montana from considering Plaintiff's VA benefits in calculating his child support obligations.

Plaintiff also argues that 38 U.S.C. § 5301(a), which prohibits assignment, attachment, levy, or seizure of benefits paid under any law administered by the Secretary of the VA, prohibits Montana's "assignment or attachment" of Plaintiff's benefits.  (Doc. 14 at 3.)  He acknowledges that *Rose* held that this statute, then numbered § 3101(a), "does not extend to protect a veteran's disability benefits from seizure where the veteran invokes that provision to avoid an otherwise valid order of child support."  *Rose*, 481 U.S. at 634.  However, he advances two theories under which *Rose* is no longer controlling law on this point.  First, he argues that Congress's amendment to § 511(a) superseded *Rose* (Doc. 14 at 3); for the reasons discussed above, the Court disagrees.  Second, he argues that a

decision by the Supreme Court shortly after Congress's amendment to § 511(a) "ruled that disability benefits are intended for the veteran exclusively"; construing this argument liberally, he suggests that this decision undermined *Rose*. (Doc. 14 at 3–4.) But that case involved a specific statute not at issue here: The Court construed a statutory provision expressly prohibiting state courts from treating specific types of military retirement pay as community property in divorce proceedings, and the savings clause of that statute expressly stated that the statute shall *not* be construed to relieve a military member of liability for payment of alimony or child support. *Mansell v. Mansell*, 490 U.S. 581, 589–90 (1989). Moreover, the Court approvingly cited *Rose* as an example of Congress passing general legislation that did not intend to displace state law "in the area of domestic relations." *Id.* at 587. Accordingly, Plaintiff overstates the breadth of the Supreme Court's decision in *Mansell*, and that case does not call into question the continued validity of *Rose* in foreclosing his argument that § 5301(a) prohibits State Defendants' consideration of his VA benefits in calculating his child support obligations. In sum, Plaintiff fails to identify a cognizable federal right to support his § 1983 claim as it relates to his VA benefits.

The Court next turns to Plaintiff's SSA benefits. Plaintiff argues that 42 U.S.C. § 405(h) and § 407 prohibit Defendants' consideration of his Social Security benefits in calculating his child support obligations. (Doc. 14 at 4.)

Those statutory provisions are virtually identical to the statutes discussed above; § 405(h) prohibits review of "findings of fact or decision of the Commissioner of Social Security . . . except as herein provided"; § 407 prohibits assignment of future Social Security payments and execution, levy, attachment, or garnishment of such payments unless another provision of law "limit[s], supersede[s] or otherwise modif[ies]" § 407 by express reference.

In a separate provision, Congress did just that.  Congress expressly referred to § 407 and provided that "moneys . . . payable by the United States or the District of Columbia (including any agency, subdivision, or instrumentality thereof) to any individual" shall be subject to withholding in accordance with State law "to enforce the legal obligation of the individual to provide child support or alimony." 42 U.S.C. § 659(a).  The Supreme Court in *Rose* described § 659 as "amend[ing] the Social Security Act to authorize garnishment of certain federal benefits . . . for spousal and child support but not for community property divisions."  481 U.S. at 632 n.6.  Plaintiff's citation to *Bennett v. Arkansas*, 485 U.S. 395 (1988), which held that § 407(a) expressly prohibited a state from attaching Social Security benefits paid to individuals who were incarcerated in its prisons, does not support his contention that § 407(a) creates an enforceable right here.  Rather, *Bennett* explained why *Rose* had a different outcome: § 407(a) "unambiguously" prohibited attachment of Social Security benefits while the Arkansas statute at issue

11

"unambiguously allow[ed]" it, which triggered conflict preemption under the Supremacy Clause.  *Id.* at 397.  By contrast, in *Rose*, there was no such statutory conflict between federal law and a state court's authority to hold an individual in contempt for failing to pay child support, and "the benefits in question were designed by Congress to support not only the recipient of the benefits, but also his dependents[,]" so allowing the state court to enforce the child support order did not frustrate the purpose of the federal statute.  *Id.* at 398.

In this case, federal law expressly allows enforcement of child support or alimony obligations against Social Security payments.  42 U.S.C. § 659(a).  Plaintiff thus cannot state a § 1983 claim based on Defendants' consideration of his Social Security benefits.

Accordingly, Plaintiff's claims relating to Defendants' consideration of his VA and SSA benefits in calculating his child support obligations are dismissed for failure to state a claim on which relief can be granted pursuant to Rule 12(b)(6).[1]

## B.    Judicial Immunity

State Defendants argue in the alternative that they are entitled to absolute immunity.  (Doc. 9 at 14.)  "Judges are entitled to absolute immunity from

---

[1] Although State Defendants do not directly address Plaintiff's assertion that he is entitled to recovery of his federal records in their argument that the Complaint should be dismissed for failure to state a claim, the Court notes that Plaintiff has identified no legal basis or theory for his assertion that Defendants "have NO right to possession or review of these records" (Doc. 7 at 14).

damages suits." *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 937 n.1 (9th Cir. 2020).  This immunity extends to persons who perform judicial functions in a setting like that of a court, including administrative law judges, *Hirsh v. Justices of S. Ct. of State of Calif.*, 67 F.3d 708, 715 (9th Cir. 1995), and persons who execute valid judicial orders, *Coverdell v. Dep't of Soc. & Health Servs.*,834 F.2d 758, 764–65 (9th Cir. 1987).  Plaintiff's factual allegations regarding State Defendants' actions make clear that those actions were undertaken in a judicial or quasi-judicial capacity in the context of Plaintiff's state court proceedings.  (Doc. 7 at 12–13.)[2]

Plaintiff does not dispute State Defendants' contention that their actions fall within the scope of judicial immunity because they were judicial in nature.  (Doc. 14 at 7.)  Plaintiff instead argues that Defendants acted in the complete absence of jurisdiction based on his argument that federal law preempts Defendants' consideration of his VA and SSA benefits.  (*Id.* at 5–7.)  "A judge is not immune for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity, or for actions, though judicial in nature, taken in the complete absence of all jurisdiction."  *Id.* (internal quotation omitted).  For the reasons discussed above, Plaintiff is incorrect that federal law prohibits Defendants' consideration of those

---

[2] Although Plaintiff alleges in passing that Defendants "used my children as hostages" (Doc. 7 at 12), the Court cannot plausibly construe this naked assertion devoid of further factual development as a literal accusation of kidnapping, especially within the broader context of the complaint. *Iqbal*, 556 U.S. at 678.

13

benefits in calculating his child support obligations.  Accordingly, Plaintiff's claims for damages against the State Defendants must be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

### C.    *Rooker-Feldman* **Doctrine**

State Defendants argue that the relief Plaintiff seeks—which includes "an injunction against the State to prevent retaliation of any kind because the Plaintiff cannot hope to enforce his federal rights in state court without federal intervention at every step" (Doc. 7 at 14)—is a request to overturn or reverse the state court's orders and referee the remanded action, which is barred by the *Rooker-Feldman* doctrine.  (Doc. 9 at 20.)  Plaintiff does not dispute that he seeks such relief; instead, his response to this argument is that Defendants' actions "made by violation of due process are instantly VOID ab initio garbage, therefore cannot be protected by R-F doctrine" and that federal preemption means that he "do[es] not have to respond to every other argument" by Defendants.  (Doc. 12 at 5; Doc. 15 at 5.)

"The *Rooker-Feldman* doctrine . . . stands for the relatively straightforward principle that federal district courts do not have jurisdiction to hear de facto appeals from state court judgments." *Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2010).  The doctrine "bars suits 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the

district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indust. Corp.*, 544 U.S. 280, 284 (2005)). In other words, this Court lacks jurisdiction where a plaintiff asserts both that his injury was caused by a legal error or errors by a state court and that the appropriate remedy is relief from the state court judgment. *Id.* at 1051. The Court agrees with State Defendants that Plaintiff's requests for declaratory judgment that the state court order is illegal and void and an injunction against the State "to prevent retaliation" while he relitigates his state court case—impliedly requesting that the Court order that such relitigation occur—fall within *Rooker-Feldman* doctrine's scope. (Doc. 7 at 2, 14.) Accordingly, the Court lacks subject-matter jurisdiction over such claims, and they must be dismissed pursuant to Rule 12(b)(1).

## II.    Defendant Maxwell's Motion to Dismiss (Doc. 10)

Defendant Katherine Maxwell moved to dismiss Plaintiff's claims against her pursuant to Rule 12(b)(6) because Plaintiff failed to allege that she acted under color of law or that she deprived him of any constitutional rights. (Doc. 11.) Plaintiff does not respond to the former argument, asserting that federal preemption resolves this case. (Doc. 14 at 5.) As discussed above, the Court has rejected this preemption argument; accordingly, Plaintiff's claim against Defendant Maxwell can be dismissed on this basis alone for failure to state a claim.

15

However, the Court also notes that Plaintiff fails to state a claim against Maxwell for the additional reason that he failed to allege that she acted under color of state law.  "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful[.]'"  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)).  Plaintiff has not alleged that Defendant Maxwell is a state actor or state employee.  Rather, his complaint alleges that she is an attorney and asserts that she "systematically used the prejudice of the other defendants to her advantage in order to violate my Rights by embezzling my benefits."  (Doc. 7 at 8, 12–13.)  These allegations are insufficient to plausibly claim that Defendant Maxwell deprived him of any federal right under color of state law.  Accordingly, Plaintiff's claims against Defendant Maxwell must be dismissed pursuant to Rule 12(b)(6).

## III.   Leave to Amend

Generally, leave to amend a complaint "should be given freely."  *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).  But a district court may dismiss a complaint without leave to amend if 'the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'"  *Sanchez v. Los Angeles Dep't of Transportation*, 39 F.4th 548, 562 (9th Cir. 2022) (quoting *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988)).  The

16

Court must consider the following factors in deciding whether to grant leave to amend: undue delay, bad faith or dilatory motive on the part of the Plaintiff, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing parties by virtue of allowance of the amendment, and futility of amendment. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "[I]t is consideration of prejudice to the opposing party that carries the greatest weight" when the plaintiff moves for leave to amend under Rule 15, which Plaintiff has not done here. *Id.*

In response to Defendants' motions to dismiss, which explain why Plaintiff's claims fail as a matter of law in several respects, Plaintiff has doubled down on his insistence that federal law prohibits Defendants from considering his VA or SSA benefits in determining his child support obligations, and, thus, the state court judgment at issue is void and Defendants are liable to him for punitive damages. (Docs. 12, 14.) Plaintiff has not advanced any alternative theory of liability, nor has he alleged any other facts that could support a plausible claim for relief against Defendants. To date, Plaintiff has not acknowledged the deficiencies in his complaint, and it is clear that this complaint cannot be saved by amendment. Plaintiff's preemption theory is meritless, and thus he cannot demonstrate deprivation of a federal right; all but one of the defendants are entitled to judicial immunity or quasi-judicial immunity based on the facts alleged; the Court cannot

17

grant Plaintiff the injunctive or declaratory relief he seeks under the *Rooker-Feldman* doctrine; and the one defendant who is not entitled to judicial immunity cannot be held liable under § 1983 because there is no plausible theory under which she acted under color of state law.  Amendment would be futile.  Moreover, amendment would cause significant prejudice to Defendants because the State Defendants would be forced to file yet another motion to dismiss despite their immunity from suit, and Defendant Maxwell likewise would be forced to continue to litigate despite the absence of a plausible theory of her liability under § 1983 as a private attorney.  Although Plaintiff has not engaged in undue delay, and the Court lacks a basis to conclude that Plaintiff is acting in bad faith, the Court concludes that the factors it must consider weigh heavily in favor of dismissing Plaintiff's complaint with prejudice to avoid futile amendment and resulting prejudice to Defendants.

## CONCLUSION

IT IS ORDERED that State Defendants' motion to dismiss (Doc. 8) and Defendant Maxwell's motion to dismiss (Doc. 10) are GRANTED.  Plaintiff's Amended Complaint (Doc. 7) is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that all other pending motions (Docs. 1, 3, 5, 16, 20) are DENIED as moot.

The Clerk of Court is directed to close this case.

18

DATED this 11th day of January, 2023.

Dana L. Christensen, District Judge
United States District Court